CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONATHAN U. LEE (CABN 148792)
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jonathan.Lee@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) NO. 4:23-CR-00191-AMO-4 |
| Plaintiff, | ) **SENTENCING MEMORANDUM OF THE UNITED STATES** |
| v. | ) |
| KEANNA SMITH-STEWART, ET AL, | ) Date: August 11, 2025<br>) Time: 2:00 p.m. |
| Defendants. | ) |

# I. INTRODUCTION

Defendant Keanna Smith-Stewart comes before the Court for sentencing after pleading guilty to Count One of the Second Superseding Indictment alleging Conspiracy to Engage in Robbery Affecting Interstate Commerce. Ms. Smith-Stewart actively participated in a conspiracy to commit armed robberies she knew were violent, and she put in work to assist the conspirators with converting the stolen merchandise into cash proceeds. On the other hand, Ms. Smith-Stewart's forthrightness in admitting her crime is a significant mitigating circumstance. Based on the aggravating and mitigating sentencing factors discussed below, the United States recommends a term of imprisonment of 50 months, which represents a significant downward variance.

# II. OFFENSE AND RELATED CONDUCT

## A. The Charges

The Second Superseding Indictment charged Keanna Smith-Stewart with Count One alleging Conspiracy to Commit Robbery Affecting Interstate Commerce, Count Four alleging Hobbs Act Robbery and Aiding and Abetting Hobbs Act Robbery on December 24, 2022, Count Five alleging Counterfeit Access Device Fraud, and Count Six alleging Access Device Fraud.

## B. The Conduct

In light of this defendant's guilty plea to the conspiracy charge, the United States will provide a brief overview of the conspirators' offense conduct.

### 1. March 2022 Robbery (Count Two)

The Second Superseding Indictment alleges that on March 18, 2022, co-conspirators Demarco Barnett, Jakari Jenkins, Ricky Joseph, and Lester Garnett committed a violent, takeover-style armed robbery of the Robert Johnson Coin & Stamp Company in San Francisco. PSR ¶¶16-18.

### 2. August 2022 Robbery (uncharged)

The investigation developed evidence that members of the charged conspiracy and others committed a nighttime intrusion into the CRAFT cannabis business in Oakland that was a burglary, but became a robbery when one or more of the conspirators drew a firearm on a CRAFT employee responding to the security alarm.

3.     November 2022 Robbery (Count Three)

The Second Superseding Indictment alleges that on November 12, 2022, co-conspirators Demarco Barnett, Jakari Jenkins, Garland Rabon, Danny Garcia, and Darren Hutchinson, as well as two others, committed a violent, takeover-style armed robbery of the H Bee Jewelry Store in San Pablo, California. PSR ¶¶19-22.

4.     November 2022 Burglary (uncharged)

The investigation developed evidence that members of the charged conspiracy committed a burglary of the Audi Oakland dealership on November 24, 2022. On November 21, 2022, Smith-Stewart and co-conspirator Burrell purchased a vehicle using a fake driver's license and another person's social security number. Three days later, on November 24, 2022, at around 2:00 a.m. (Thanksgiving morning), the Audi dealership was burglarized and the safe was stolen. Cell phone data records show that Barnett, Jenkins, Rabon, Garcia and Burrell were present at the Audi Oakland premises at the time of the burglary. The phone records show that the group met at or near Danny Garcia's residence in Oakland before and after the burglary. PSR ¶¶24-25.

5.     December 2022 Robbery (Count Four)

The Second Superseding Indictment alleges that on December 24, 2022, co-conspirators Demarco Barnett, Jakari Jenkins, Garland Rabon, Danny Garcia, Aramiya Burrell, Lester Garnett, and Darren Hutchinson, committed a violent, takeover-style armed robbery of the Joyus Wellness premises in Oakland, California. PSR ¶¶23-28.

C. **<u>Ghost Town gang membership</u>**

Ms. Smith-Stewart was associating with Ghost Town gang members, including those charged in this case, during the course of the charged conspiracy. She posted photos on social media of her association with the gang and the robberies. She is visible in the Youtube video of the surprise party for Aramiya Burrell. https://www.youtube.com/watch?app=desktop&v=n0MOJIYM1JU&edufilter=NULL She assisted the gang by selling stolen merchandise for them.





4

[video still image]

### III.      CRIMINAL HISTORY

Ms. Smith-Stewart has a criminal history score of 11, placing her in Criminal History Category V.  Her prior convictions arise from thefts in disparate areas of the country, including credit card abuse in San Antonio in 2014, petty theft in Kansas in 2016, access device fraud in Alabama in 2016, credit card theft in Virginia in 2017, and theft in Santa Rosa, California in 2023.  PSR ¶¶52, 54, 55, 56, and 57. Her escalating sentences for these convictions did not dissuade Ms. Smith-Stewart from committing the offense conduct here while on federal supervision.  See ¶52 (4 years supervision), ¶54 (2 days), ¶55 (28 months), ¶56 (4 months), and ¶57 (76 days).

### IV.      VICTIM IMPACT AND RESTITUTION

A.      **Victims**

The victims in this case suffered physical and psychological injuries as a result of the conspiracy. Given Ms. Smith-Stewart's admissions regarding joining and remaining in the conspiracy with knowledge of its objects and tactics, the government will recount the victims' experience in summary.

5

1. Coin store robbery

There were two victims present during the March 2022 robbery of the coin store in San Francisco. K.B., an immigrant from Europe who was in his early 70s at the time, was present with his adult son E.B., who was in his early forties. K.B., whose description of the robbery was produced in discovery, stated that three suspects forced their way into the business by pushing open the front door. All three were armed with firearms, wearing masks and gloves. One suspect forced K.B. to sit in a chair, with the other two forced E.B. to the ground, tied him up, and hit him on the head. K.B. said the suspect who stayed with him pointed a firearm at his head for the entirety of the robbery, telling K.B. that he was in charge. His voice did not sound nervous or scared to K.B. He then forced K.B. into the adjacent room where the other two had his son on the ground. The suspect told K.B. that if he wanted for him and his son to live, he will open the safe. K.B. opened the one safe that was still locked. The suspects then took cash, coins, and watches. One suspect told the other that the group only had 3-5 minutes before they needed to leave. Before leaving the coin store, the suspects took K.B. and E.B.'s wallets and cell phones. One of the suspects pulled K.B.'s license out of his wallet, showed it to him, and told him that they know where the two victims live and warned them not to do anything stupid. E.B. received treatment for his injuries at S.F. General Hospital. K.B. went to Kaiser Hospital and received treatment for one week due to the injuries he received in the robbery.

2. Jewelry store robbery

The victims inside the jewelry store included H.S. (the owner), Y.S. (his elderly mother), and two employees I.C. and J.C., as well as customers who have not been identified. Surveillance footage shows the store owner closing the rear door, at which point five hooded and masked men enter the store pushing through the same door. The robbers point a firearm as H.S. as they shove him inside the store. One of the men pushes H.S. to the ground, yelling "Don't fucking move! Don't fucking move! Stay down!" Y.S. shrieks in fear as she backs up and then turns to run to the front of the store. Another man points a firearm towards the store's front, where the customers and young child had been shopping. I.C. exits the toilet and is met by a robber with a gun pointed at him. At the same time, other robbers ransack the store of approximately $300,000-$500,000 worth of jewelry from several different drawers, containers, and safes, and then fled in two getaway cars. The entire robbery took less than two minutes.

3.    Marijuana business robbery

There was one individual present for this robbery, A.P., who described how the robbers confronted him as he was leaving the Joyus premises. A.P. followed his standard practice for leaving Joyus, which was to call a coworker J.A., who had access to the exterior video cameras, so he could give A.P. the "okay" to leave. A.P. went to his vehicle and started the engine when one of the robbers appeared with a firearm pointed at A.P. Other suspects also appeared and they got A.P. out of the vehicle, and then they took his driver's license, debit card, cash and cell phone. The suspects took A.P. back inside the business. They led him by the back of his neck. They asked him where the money was repeatedly. A.P. directed the suspects to the vault. The suspects had A.P. lay down on the ground, face down, and one of the suspects held him down with a foot. Later, A.P. got to his feet and the suspects took him to the immature marijuana plants area. He told the suspects the business did not have mature plants. The suspects escalated their demands and tone. One of them struck A.P. on the head with the back of a gun. The suspects acted with a sense of urgency. They wore masks and hoods. After they took A.P. to an office area, kicking in the door to gain entry, A.P. heard them yelling about the police and fleeing. A.P. stayed on the ground until all the suspects left Joyus. There were unauthorized charges on his debit card in the following days, but his bank reimbursed him for those charges. He bought a new cell phone. He received treatment for his bleeding cut on his head, and he felt a bump in that area in the following days.

## V.    SENTENCING GUIDELINES CALCULATIONS

The parties' plea agreement calculates a Total Offense Level of 27 after acceptance. Probation calculates a Total Offense Level of 28. PSR ¶¶ 35-48. Using the Criminal History Category V, the advisory sentencing range is 120-150 under the plea agreement, or 130-162 using Probation's calculation.

## VI.    APPLICABLE LAW

### A.    Sentencing Framework

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate

7

sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; 4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and 5) the need to provide restitution to any victims of the offense.

**B.    Conspiracy, Aiding and Abetting, and Robbery Affecting Interstate Commerce Framework**

Violations of Title 18, section 1951, also known as Hobbs Act robbery, are a crime of violence. *See United States v. Knight*, No. 21-10197, 2023 WL 34698, at *2 (9th Cir. Jan. 4, 2023), *cert. denied*, 143 S. Ct. 2478, 216 L. Ed. 2d 441 (2023), *citing United States v. Dominguez*, 954 F.3d 1251, 1261 (9th Cir. 2020), *cert. granted, judgment vacated*, 142 S. Ct. 2857 (2022), *and reinstated in part by* 48 F.4th 1040 (9th Cir. 2022) ("We reaffirm that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(A)."). The same is true for the offense of aiding and abetting such a robbery. *United States v. Joseph*, No. 19-169767, 2022 WL 850036, at *1 (9th Cir. Mar. 22, 2022), citing *Young v. United States*, 22 F.4th 1115, 1122 (9th Cir. 2022) ("[T]here is no distinction between aiding-and-abetting liability and liability as a principal under federal law.")

An offender who aids and abets another offender if "treated as if they committed the offense as principals." *See United States v. Henry*, 984 F.3d 1343, 1356 (9th Cir.), *cert. denied*, —— U.S. ——, 142 S. Ct. 376, 211 L.Ed.2d 200 (2021) ("Defendants found guilty of armed bank robbery under ... [an] aiding-and-abetting theory are treated as if they committed the offense as principals."); *see also Ortiz-Magana v. Mukasey*, 542 F.3d 653, 659 (9th Cir. 2008) (stating that "aiding and abetting an [offense] is the functional equivalent of personally committing that offense"); *United States v. Jones*, 678 F.2d 102, 104 (9th Cir. 1982) (holding that "any person who aids or abets" a violation of § 2113 "is punishable as

a principal"); *United States v. Sannicandro*, 434 F.2d 321, 324 (9th Cir. 1970) ("This circuit is committed to the view that whoever aids or abets the commission of an offense against the United States is punishable as a principal.").

## VII. SENTENCING RECOMMENDATION

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C.§3553(a), the government respectfully recommends that the defendant be sentenced to 50 months in prison, three years of supervised release, forfeiture, and full restitution in an amount to be determined. Such a sentence would be sufficient, but not greater than necessary, based on the nature of the offense, the need for deterrence, and the history and characteristics of the defendant. The recommended sentence accounts for the aggravating sentencing factors while also balancing the mitigating factor of Ms. Smith-Stewart's acceptance of responsibility.

### A. Nature of the offense

Ms. Smith-Stewart participated in a violent conspiracy that harmed the community. She was on supervised release while doing so. She has admitted that she knew the objects of the conspiracy included the use of firearms to threaten and restrain victims, and she nonetheless remained involved. She participated in fraudulent transactions with co-conspirators. One such transaction was the Audi purchase on November 21, 2022, with co-defendant Aramiya Burrell, using a fake driver's license and another person's social security number. Three days later, Burrell and multiple co-conspirators burglarized the Audi dealership and stole its safe. Within a week or two, Ms. Smith-Stewart and others attended the party for Burrell, at which she and others wore jewelry stolen from H Bee in San Pablo on November 12, 2022. Ms. Smith-Stewart participated in the Joyus robbery. She was outside in a position to alert the robbers if needed. Over the following day or two, Ms. Smith-Stewart used the debit card of the Joyus victim to purchase over $1,000 of merchandise at stores in San Francisco. She worked through online posts and messages to try to sell items of jewelry stolen by the co-conspirators from H Bee. In sum, Ms. Smith-Stewart played an important role in the success of the conspiracy.

### B. Need for deterrence

The need for deterrence in this case is an aggravating sentencing factor. As for specific deterrence, Ms. Smith-Stewart has multiple felony convictions. She is in the second-highest criminal

history category.  Her history includes probation and supervised release violations. The recommended sentence will protect the community from Ms. Smith-Stewart's future offenses.

In addition, the need for general deterrence is high.  The community has a strong interest in curbing this violent conduct, as well as those who participate in various non-violent means by helping to scout targets or sell stolen merchandise.  According to crime data, robberies involving the use of a firearm increased in Oakland by 50% in 2023, the calendar year following the offense conduct in this case.  Robbery crews using firearms to overwhelm small businesses is an ongoing concern.  The victims in this case provided vivid descriptions of the fear and terror they experienced at the hands of the co-conspirators.

The recommended sentence will signal to like-minded individuals (and to Ms. Smith-Stewart) that the Court does not tolerate this offense conduct and will impose serious consequences for those proven to have committed similar conduct.

### C. History and characteristics of the defendant

Ms. Smith-Stewart is a 32-year-old native of Oakland who has an extensive criminal history. The Probation Department describes her childhood and upbringing as difficult and abusive, with the details set forth in the PSR.  She witnessed firearms violence involving her family members, and she herself was shot in an incident in 2017.

Ms. Smith-Stewart is a high school graduate and she attended some college at the College of Alameda.  During her pretrial detention, she has completed several certificates, and she joined a braiding group.  Before her arrest, she worked for the Tenderloin Neighborhood Development Center for an hourly wage, and her previous employment included work selling hair extensions.  While in custody, Ms. Smith-Stewart has worked as a pod worker at Santa Rita Jail, assisting deputies and fellow detainees with a variety of activities and tasks.

To her credit, Ms. Smith-Stewart has admitted her conduct and accepted responsibility for it. The government's recommendation, which amounts to a significant reduction from the bottom end of the applicable guidelines range, takes into account this early acceptance of responsibility.

### VIII.  CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 50 months of imprisonment, followed by a 36-month term of supervised release, with each of the conditions set forth in the plea agreement, including the expanded search condition.

DATED:  August 4, 2025

Respectfully submitted,
CRAIG H. MISSAKIAN
United States Attorney

____/s/_____
JONATHAN U. LEE
WENDY M. GARBERS
Assistant United States Attorney